UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAROLD A. TAYLOR,

      Plaintiff,                                Case No. 8:11-CV-02709-T-24-TGW

vs.

TEAKDECKING SYSTEMS, INC.,

      Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant Teakdecking Systems, Inc.'s Motion for Summary Judgment. [Doc. 10]. Plaintiff Harold A. Taylor opposes the motion. [Doc. 11]. As explained below, the motion is granted.

**I.    Factual Background**

Plaintiff, who is African-American, was hired in October 2006 as a Human Resources Manager with Defendant, a manufacturer of custom-built teak decks and flooring for yachts, cruise ships, and homes. [Pl. Depo. 22].[1] Plaintiff's duties included maintaining applicant, personnel, payroll, and medical records, employee relations and terminations, benefit administration, and ensuring compliance with human resources laws and regulations. [Depo. 17, 208, 213-17]. His supervisor was Michael Havey, Defendant's Director of Quality Assurance and Employee Development. [Pl. Depo. 153; Doc. 10-4 at ¶ 2].

---

[1] The record does not include a complete transcript of Plaintiff's deposition. Plaintiff did not file his deposition transcript with the Court, and he cites to no specific part of his deposition as support for his response to Defendant's motion for summary judgment. Any references to Plaintiff's deposition transcript come from a compilation of excerpts attached to Defendant's motion for summary judgment. [Doc. 10-2].

1

Plaintiff contends that Jeanette Johnson, a white employee who was Defendant's receptionist, discriminated against him. [Pl. Depo. 153; Doc. 1-1]. Ms. Johnson would state a caller's name and position when transferring calls to white employees, but when transferring calls to Plaintiff, she would simply state "line 1" or "line 2." [Pl. Depo. 170; Doc. 1-1]. When Plaintiff asked why he was treated differently, Ms. Johnson told Plaintiff that she did not want to work for a black person. [Pl. Depo. 164].

Plaintiff also contends that black employees bore the brunt of terminations. [Doc. 11-1 at ¶ 5]. Out of 39 employees discharged during his 4-year employment with Defendant, 17 were black and 22 were white. [Pl. Depo. 382]. Plaintiff claims all black employees were arbitrarily terminated based on race, were told inconsistent reasons for their termination, and did not receive a 90-day notice of termination. [Doc. 11-1 at ¶ 5-6]. Further, Plaintiff claims Defendant hired two white employees after terminating black employees. [Doc. 11-1 at ¶ 6; Pl. Depo. 121].

Plaintiff points to an unspecified ten-month period during which he claims nine black employees were identified as candidates for termination. [Doc. 11-1 at ¶ 5]. Plaintiff appears to assert that, when ranking candidates for termination, Defendant ranked white employees higher than black employees, despite both having the same level of skill, behavior issues, and primary issues. [Doc. 11-1 at ¶ 6].

In or around May 2010, Mr. Havey identified ten candidates for termination, four of whom were black. [Doc. 1-1; Pl. Depo. 379; Doc. 10-4 at ¶ 16]. Plaintiff complained to Mr. Havey that 40% of these candidates were black. [Doc. 1-1; Doc. 11-1 at ¶ 3]. Ultimately, none of these ten candidates were terminated. [Doc. 10-4 at ¶ 19]. Plaintiff believes that his opposition led to his termination. [Doc. 1-1].

Lars Lewander, President of Defendant, made the decision to terminate Plaintiff. [Pl. Depo. 237-238; Doc. 10-3 at ¶¶ 10, 14]. In an October 15, 2010 meeting with Mr. Havey and Plaintiff, Mr. Lewander told Plaintiff that the human resource function would be outsourced and Plaintiff was terminated. [Doc. 1-1; Pl. Depo. 237-238].

On November 24, 2010, Defendant entered into an outsourcing agreement with Integrated Employer Resources. [Doc. 10-4 at ¶ 21; Doc. 10-5 at ¶ 11, Ex. A]. Although Plaintiff does not dispute that his position was outsourced, he points to the month-long interlude following his discharge during which Mr. Havey, who is white, took over Plaintiff's duties. [Doc. 1-1; Pl. Depo. 19; Doc. 11-1 at ¶¶ 3, 8].

On December 1, 2010, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). [Doc. 1-1]. The EEOC issued Plaintiff a right to sue letter, and Plaintiff timely filed this lawsuit. [*Id*.].

Plaintiff asserts the following claims against Defendant: (1) racial discrimination in Defendant's decision to terminate Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the Florida Civil Rights Act; and (2) retaliation for Plaintiff's complaining to Defendant about race discrimination against himself and other employees. [Doc. 1].

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of

3

showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id*. (citation omitted).

**III.    Legal Analysis**

    **A.    Discrimination[2]**

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). To establish a Title VII discrimination claim, Plaintiff must present proof of discriminatory intent through either direct or circumstantial evidence. *See Maynard v. Bd. of Regents,* 342 F.3d 1281, 1288 (11th Cir. 2003).

    **1.    Plaintiff has no direct evidence of discrimination.**

Direct evidence of discrimination "is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" some impermissible factor constitute direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and quotations omitted).

---

[2] Because the Florida Civil Rights Act was patterned after Title VII and Florida courts have applied decisions relating to Title VII when analyzing claims under the Florida Civil Rights Act, the Court's analysis of Plaintiff's Title VII claims also applies to his claims under the Florida Civil Rights Act. *See Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998).

4

Ms. Johnson's alleged statement—that she did not want to work for a black person—is not direct evidence of discrimination in the termination of Plaintiff. Ms. Johnson was not a decision-maker, and her comment was unrelated to the decision to terminate Plaintiff. *See Standard,* 161 F.3d at 1330) (remarks by non-decisionmakers or unrelated to the decision-making process are not direct evidence). Because Ms. Johnson's remark does not reveal blatant discriminatory animus without inference or presumption by a decision-maker, Plaintiff has failed to prove discrimination with direct evidence.

### 2. Plaintiff has no circumstantial evidence of discrimination.

If Plaintiff cannot prove discrimination by direct evidence, as is the case here, Plaintiff must establish his prima facie case through the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). If Plaintiff is able to do so, Defendant must articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id*. at 1564. Once Defendant has met this "exceedingly light" burden, Plaintiff must establish that Defendant's articulated reason is merely a pretext for discrimination. *Id*. at 1564-65.

#### a. Plaintiff fails to establish a prima facie case of discrimination.

To establish a prima facie case of discriminatory discharge, Plaintiff must show that he: (1) is a member of the protected class, (2) was qualified for the job from which he was discharged, (3) was discharged, and (4) was treated less favorably than a similarly-situated person, or replaced by a person, outside his protected class. *See Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir. 2003). "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield,* 115 F.3d at 1562. The "comparator must be nearly identical

to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004). If Plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present. *See Holifield,* 115 F.3d at 1562.

Plaintiff does not establish that a non-minority employee replaced him. Plaintiff admits his position was outsourced. [Pl. Depo. 198]. He does not dispute that his position continues to be outsourced today. The fact that Mr. Havey, who is white and whose responsibilities included supervising several functions such as human resources, temporarily took over Plaintiff's duties after his termination until outsourcing began does not mean Mr. Havey replaced Plaintiff. [Doc. 10-4 at ¶ 2].

Nor does Plaintiff identify, let alone provide evidence establishing, a valid comparator. Although he generally alleges that "similarly situated white employees" or "white salaried employees" or "white employees" were treated more favorably—*e.g.,* they were given fewer pre-employment tests, were not required to swipe a time card or complete a weekly report, or were allowed to retrieve their personal possessions and obtain their employment records after their termination [Doc. 1 at ¶¶ 17-23]—Plaintiff fails to identify any specific white employee who was nearly identical to him and who was treated more favorably. This factor is simply unaddressed in Plaintiff's affidavit and undeveloped in the record.

Plaintiff does not compare himself to any other similarly-situated employee but focuses instead on the disparate treatment of other black employees. Specifically, Plaintiff asserts (but provides insufficient evidence in support) that other black employees were treated differently than white employees. However, Plaintiff cannot establish a prima facie case of discrimination as to his own termination by pointing to discrimination towards other black employees. *See*

6

*Holifield,* 115 F.3d at 1563 (no prima facie case where evidence did not show discrimination concerning the plaintiff but, at most, showed discrimination existed at the defendant's company).

Nor does Plaintiff assert that any white employee was treated more favorably with respect to the challenged decision—termination. Plaintiff provides no evidence that a similarly-situated white employee was not terminated for the same reasons that Plaintiff was terminated.

Ultimately, the central inquiry in evaluating whether Plaintiff has met his initial burden is whether the circumstantial evidence presented is sufficient to create an inference of discrimination. *See id.* at 1564. Taken in the light most favorable to Plaintiff, the circumstantial evidence presented here—which consists of excerpts of Plaintiff's deposition, [Doc. 10-2], and Plaintiff's scarce affidavit setting forth Plaintiff's opinions, unsupported conclusions, general denials, and inscrutable exhibits, [Doc. 11-1]—fails to support an inference that Defendant terminated Plaintiff based on his race. Therefore, Plaintiff fails to show a prima facie case of discrimination.

**b.      Plaintiff fails to establish that Defendant's legitimate, nondiscriminatory reason is pretext for discrimination.**

Even if Plaintiff could establish a prima facie case, Defendant is still entitled to summary judgment because Defendant articulated a legitimate, nondiscriminatory reason for terminating Plaintiff, which Plaintiff fails to show is pretext for discrimination.

Defendant outsourced Plaintiff's human resources function primarily because Plaintiff's performance was unsatisfactory. [Doc. 10-4 at ¶¶ 16, 20; Doc. 10-5 at ¶ 8]. This is a legitimate, nondiscriminatory reason for termination. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (a good faith belief that an employee's performance is unsatisfactory is a legitimate and nondiscriminatory reason for termination).

Defendant points to several incidents of Plaintiff's poor performance. In October 2008, Mr. Havey submitted a written counseling statement report describing Plaintiff's performance at a presentation as unprofessional and lackluster. [Doc. 10-4 at ¶ 5, Ex. A]. In March 2009, Mr. Havey noted that Plaintiff ineffectively communicated disapproval with the decision to terminate an employee (a white male). [Doc. 10-4 at ¶ 6, Ex. B]. In May 2010, having provided Plaintiff a list of ten employees to be considered for termination, Havey asked Plaintiff to meet with each employee; Plaintiff failed to do so. [Doc. 10-4 at ¶ 19]. In early October 2010, Havey learned about a female employee's report that Plaintiff would not permit her to travel out-of-town with a male installation crew because she was a female and could claim rape. [Doc. 10-4 at ¶ 22, Ex. F; Doc. 10-3 at ¶ 7].

Plaintiff fails to establish that Defendant's legitimate, nondiscriminatory reason is pretext—that it is false and that discrimination was the real reason. *See Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) ("A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (citation and quotation marks omitted). Plaintiff admits to receiving, and the occurrence of events surrounding, the October 2008 counseling statement. [Pl. Depo. 226-27]. He also admits that he failed to meet with the ten candidates for termination in May 2010, as requested by Mr. Havey. [Pl. Depo. 379]. As for the remaining incidents identified by Defendant, Plaintiff fails to even address them. Plaintiff simply fails to rebut Defendant's reason for terminating him. *See Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000) (if employer's reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it").

Instead, Plaintiff argues that Defendant could not have believed his performance was unsatisfactory, because he received no performance review after January 1, 2007. [Doc. 11 at 2-5; Doc. 11-1 at ¶ 4]. However, the lack of performance reviews is a non-sequitor; Plaintiff fails to even assert that Defendant gave no reviews to those employees believed to be performing satisfactorily. The lack of performance reviews, standing alone, does not establish that Defendant did not believe Plaintiff performed poorly or that discrimination was the real motivation for terminating him.

Plaintiff's belief that "he performed the job of human resources manager exceptionally well beyond the requirements of the employment duties" is also irrelevant. [Doc. 11 at 2]. Self-serving assertions would not allow a reasonable fact-finder to infer that Defendant could not have believed Plaintiff performed unsatisfactorily. *See Wilson*, 376 F.3d at 1090. Further, when poor performance is the reason for termination, "the question is not whether [P]laintiff's performance was *actually* poor, but whether [Defendant] believed [P]laintiff's performance was poor." *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010).

Plaintiff also attempts to cast doubt on Defendant's reason for termination by arguing that outsourcing is "a sham" because it was illogical to outsource during the open-enrollment season for employee benefits, which is a busy time for human resources. [Pl. Depo. 198]. However, Plaintiff cannot raise a genuine issue of material fact "by simply quarreling with the wisdom of [Defendant's] reason." *Chapman*, 229 F.3d at 1030. Plaintiff also points out that his job was the only one outsourced. [11-1 at ¶ 4]. Even if this were true, Plaintiff does not explain how this fact shows Defendant's decision to outsource Plaintiff's function was motivated by discrimination rather than Defendant's belief that Plaintiff performed poorly.

9

Further, Plaintiff's assertions that Defendant discriminated against other black employees appear to be an attempt to argue that discrimination motivated Defendant's decision to terminate him. However, Plaintiff offers unsupported, nonsensical evidence lacking in probative value, which neither show discrimination against other black employees nor Defendant's reason for terminating Plaintiff was pretextual.

For example, Plaintiff believes Exhibit A—a document showing a list of names and columns for "skill," "behavior," "primary issues" and purportedly containing Plaintiff's handwritten notes—shows that black employees were arbitrarily terminated. [Doc. 11-1 at ¶¶ 5-6, Ex. A]. At the outset, Plaintiff's assertion that the handwritten notes are his own conflicts with Exhibit A, which on its face reveals one handwritten note stating, "Alan Breslow's Handwriting." [*Compare* Doc. 11-1 at ¶ 5 *with* Ex. A]. Even if the Court were to set aside authentication and admissibility issues, Exhibit A—which does not specify who is black, who was terminated, and the reason for termination—does not support Plaintiff's claim that it shows the arbitrary termination of black employees. Plaintiff gives few explanations regarding the meaning of the document's provided information and any explanation actually provided makes little sense. The Court simply has no foundation for discerning what Exhibit A means or whether it shows pretext.

Similarly, Plaintiff presents Exhibit B—a typed document with a list of names organized by rank—but provides no relevant details that would enable the Court to analyze the information. [Doc. 11-1 at ¶ 8, Ex. A]. Plaintiff claims Exhibit B shows a bottom-ranked white employee was transferred to avert a layoff but the "six black employees just above him were then identified for termination." [Doc. 11-1 at ¶ 8]. However, Exhibit B does not support Plaintiff's claim. Exhibit B does not specify the race of each employee, so it is unclear what "six black employees just

above him" references.  Nor does Exhibit B specify whether the employee was terminated, transferred, or otherwise affected.

The Court finds that Exhibits A and B have little probative value, because they lack relevant supporting facts providing the Court with a sufficient foundation for analyzing the information.  *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Thus, Plaintiff's affidavit assertions regarding discrimination against black employees are unsupported conclusions that are insufficient to create a genuine issue of material fact as to whether Defendant's reason for terminating Plaintiff is pretext for discrimination.

Further, Plaintiff claims that 17 out of 39 discharged employees were black, two white employees were hired after the termination of black employees, and black employees were told inconsistent reasons for their termination and received no 90-day notice of termination.  Plaintiff again fails to assert, let alone provide evidence showing, any relevant facts necessary to support those assertions.

Ultimately, Plaintiff's evidence mainly consists of conclusory allegations or unsupported assertions of discrimination that "are not sufficient to raise an inference of pretext." *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996) (citation and quotation marks omitted); *see also Carter v. Miami*, 870 F. 2d 578, 585 (11th Cir. 1989).  Although Plaintiff "dispute[s] ALL allegations of Defendant" and believes that "[t]he outsource was a sham," [Doc. 11-1 at ¶ 9], the Court concludes that Plaintiff's evidence does not create a genuine issue of material fact as to the credibility of Defendant's legitimate, nondiscriminatory reasons for terminating him.

By failing to "present significant probative evidence on the issue to avoid summary judgment," Plaintiff does not meet his "burden of establishing pretext for discrimination." *Mayfield*, 101 F.3d at 1376 (citation and quotation marks omitted). Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

### B. Retaliation

Title VII prohibits employers from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). Similar to the framework for racial discrimination claims, when a plaintiff alleges a retaliation claim without direct evidence of the employer's retaliatory intent, as is the case here, the Court applies the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in statutorily protected expression, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there was some causal relation between the two events. *See Worley v. City of Lilburn*, 408 F. App'x 248, 250 (11th Cir. 2011). The burden then shifts to Defendant, who must demonstrate a legitimate, non-retaliatory reason for its actions. *Id*. at 251. Plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is merely pretext for prohibited, retaliatory conduct. *Id*.

At the outset, the Court notes that a significant portion of Plaintiff's affidavit relates to Plaintiff's argument that Defendant terminated him in retaliation for his opposition to the discrimination and harassment of a white female with cancer. [Doc. 11-1 ¶¶ 2-3, 7; Depo. 233]. However, such a retaliation claim does not relate to, or grow out of, any allegation in Plaintiff's EEOC charge (or even his complaint), and, thus, will not be considered by the Court. *See*

*Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (a plaintiff's Title VII action is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" (quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000))).

To the best the Court can discern, Plaintiff appears to base his retaliation claim on the complaint identified in his EEOC charge—his May 2010 complaint to Mr. Havey that four out of ten candidates identified for termination were black employees. [Doc. 1-1]. However, even if the Court assumed Mr. Havey was involved in Mr. Lewander's decision to terminate Plaintiff, Plaintiff is unable to establish the third prong of the prima facie case, which requires Plaintiff to show "the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman,* 526 F.3d 1370, 1376 (11th Cir. 2008) (quotation and alterations omitted). A causal connection can be established by "showing close temporal proximity" between the protected activity and the adverse action. *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007). Plaintiff's complaint to Mr. Havey occurred in May 2010 and his termination in October 2010. This five-month lapse in time is too long to establish the requisite causal connection. *See, e.g., Webb-Edwards v. Orange County Sheriff's Office,* 525 F.3d 1013, 1029 (11th Cir. 2008) (holding that an almost six-month gap between a complaint and a failure to transfer was insufficient to establish a causal connection).

Even assuming Plaintiff can establish a prima facie case of retaliatory discharge, summary judgment is still proper because Defendant has offered a legitimate nondiscriminatory reason for termination—Defendant outsourced Plaintiff's function because of Plaintiff's unsatisfactory performance. As fully discussed in connection with Plaintiff's discrimination claim, Plaintiff fails to provide any evidence rebutting Defendant's reason. Accordingly,

Plaintiff has not shown that there is a genuine issue of fact regarding whether Defendant's legitimate, nondiscriminatory reason is pretextual, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

Finally, in his retaliation claim, Plaintiff alleges Defendant "refused to rehire" him. [Doc. 1 at ¶ 44]. However, Mr. Lewander testified that Plaintiff did not request re-employment with Defendant. [Doc. 10-3 at ¶ 15]. This is a legitimate, nondiscriminatory reason, which Plaintiff neither addresses nor refutes. Thus, Defendant is also entitled to summary judgment on this aspect of Plaintiff's retaliation claim.

## IV.   Conclusion

Defendant's Motion for Summary Judgment [Doc. 10] is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant Teakdecking Systems, Inc. and against Plaintiff Harold A. Taylor, to close this case, and to terminate any pending motions. The pretrial conference previously scheduled for this case on April 16, 2013, is hereby cancelled, and this case is removed from the Court's May 2013 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 9th day of April, 2013.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record